The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

IN RE STARBUCKS CONSUMER
LITIGATION

MASTER CASE NO. C11-1985MJP

NOTE ON MOTION CALENDAR:
NOVEMBER 30, 2012

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS SETTLEMENT

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs respectfully request that the Court enter an order (substantially in the form of Exhibit D to the Stipulation and Settlement Agreement), preliminarily approving the settlement of this action that has been reached by the parties. A copy of the Stipulation and Settlement Agreement executed by the parties' representatives is attached hereto as Appendix 1. Defendant assents to the granting of this motion.

## I.     INTRODUCTION

Plaintiffs Jonah Cannon, James Kaen, and Rachel Wassel ("Plaintiffs") seek preliminary approval of their proposed Stipulation and Settlement Agreement (the "Settlement Agreement") with Starbucks Corporation ("Starbucks") involving persons who purchased "scooped" coffee beans in amounts of less than one pound at company-owned Starbucks stores in the United States and paid an unposted differential price ("Upcharge")[1] on such purchases as compared to one-pound purchases. Plaintiffs challenged this nationwide practice on the grounds that the Upcharges were undisclosed and that the practice of applying the Upcharges was unfair and deceptive in violation of consumer protection statutes, was in breach of the contracts made between Starbucks and the purchasers, and that Starbucks had been unjustly enriched at the expense of customers.

During the period from December 9, 2007 through and including November 7, 2011 (the "Class Period"), Starbucks charged and received a total of approximately $1,733,000 in Upcharges on scooped coffee bean purchases in amounts less than one pound that did not have a price posted at company-owned U.S. Starbucks stores ("Covered Purchases"). As noted above, Plaintiffs contend that Starbucks wrongfully charged these undisclosed Upcharges. Although Starbucks admits that it charged Upcharges on purchases of less than a pound of scooped coffee beans, it denies any wrongdoing or liability of any kind whatsoever arising from those transactions. What the parties dispute – and the issue that would be placed before the Court

---

[1] Capitalized terms in this motion have the meanings given to them in section 1 of the Settlement Agreement.

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

and/or jury in the absence of settlement – is whether Starbucks' manner of applying these Upcharges violated the law.

The proposed settlement is fair and reasonable in light of the fact that Class Counsel[2] negotiated a settlement fund of $1,733,025, which represents approximately 100 percent of the Upcharges paid by Class Members (defined below) on Covered Purchases during the Class Period. The settlement allows Class Members to realize a substantial recovery and to avoid the uncertainty, risk, and expense that would be involved in a protracted prosecution of this case. As will be explained below, this case is not without unique and challenging issues of first impression. It goes without saying that the recovery of 100 percent of the Class Members' alleged injury represents a fair and reasonable resolution of the claims against Starbucks. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed settlement; (2) conditionally certify the nationwide Class for settlement purposes; (3) approve the Notice Plan described below and in Exhibit C to the Settlement Agreement; (4) appoint Simpluris, Inc. as the Claims Administrator pursuant to the Settlement Agreement; (5) appoint Block & Leviton LLP and Shapiro Haber & Urmy LLP as Class Counsel and Byrnes Keller Cromwell LLP as Liaison Counsel; and (6) schedule a hearing, after notice, to consider final approval of the settlement, administration fees, and Class Counsel's request for attorneys' fees and costs.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background and the Parties' Contentions

Starbucks Corporation is a roaster and retailer of specialty coffee with its headquarters in Seattle, Washington. Consol. Am. Compl. ("CAC") ¶ 9 (Dkt. 38). Starbucks offers, among other things, coffee beans for sale in sealed, prepackaged bags in increments of one pound and, on occasion, half a pound, and Starbucks also accommodates customer requests for less than a

---

[2] "Class Counsel" means Block & Leviton LLP and Shapiro Haber & Urmy LLP as Co-Lead Counsel and Byrnes Keller Cromwell LLP as Liaison Counsel.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

pound of coffee beans by "scooping" the desired amount, usually by opening a retail one-pound prepackaged bag and measuring out the amount desired and either setting aside for future sale or discarding the remaining amount in the bag. Settlement Agreement at 2.

During the Class Period, Starbucks charged a higher price per pound for purchases of less than a pound of scooped coffee beans than it charged for a one-pound bag of the same type of coffee, and except for half-pound purchases of certain types of coffee beans from January to March 2008, Starbucks did not post in its stores or on packages the Upcharge for purchases of scooped coffee beans in amounts less than one pound. *Id.* As of November 7, 2011, Starbucks eliminated Upcharges related to the sale of whole-bean coffee in amounts less than one pound and has no intent to charge them again. *Id.* at 2 and ¶ 3.1.

Plaintiffs are frequent customers of Starbucks who purchased repackaged containers containing less than one pound of coffee beans on several occasions during the Class Period. CAC ¶ 32. They were not aware of the Upcharges at the time of their purchases. *Id.* ¶ 31.

**B.    Procedural History**

As the result of news reports in the Boston media, Class Counsel initiated an investigation by filing a Public Records Request with the Massachusetts Office of Consumer Affairs and Business Regulation ("MOCABR") regarding MOCABR's 2011 investigation of Upcharges at Starbucks. The documents produced by MOCABR confirmed and detailed the conduct of Starbucks which is the subject of the Complaint in this action.

Plaintiff Rachel Wassel filed her complaint against Starbucks in Massachusetts Superior Court on December 9, 2011 (Civil Action No. 11-4503). An action challenging the same conduct (Civil Action No. 2:11-cv-1985-MJP) had already been filed in this Court on November 29, 2011 by Plaintiff Bonnie Kurnick, and on January 30, 2012 Plaintiffs Jonah Cannon, James Kaen and Rachel Wassel filed a separate action against Starbucks in this Court (Civil Action No. 2:12-cv-00169-MJP). The Massachusetts action filed by Rachel Wassel was then dismissed on

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS SETTLEMENT (MASTER CASE NO.
C11-1985MJP) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

February 22, 2012.[3] All of those cases challenged Starbucks' practice of charging undisclosed Upcharges, but only the Cannon, Kaen, and Wassel complaint contained allegations specifically based on the documents produced by MOCABR.

By order of this Court dated March 12, 2012, the Cannon and Kurnick actions were consolidated into *In re Starbucks Consumer Litigation*. Under the Court's order any future-filed or transferred tag-along actions on behalf of persons who purchased Starbucks coffee beans in amounts of less than one pound and were subject to Upcharges on such purchases were also to be part of the consolidated action. Dkt. 33. In that same order, this Court appointed the law firms Block & Leviton LLP and Shapiro Haber & Urmy LLP as Interim Co-Lead Counsel and Byrnes Keller Cromwell LLP as Liaison Counsel. *Id.*

On April 16, 2012, Plaintiffs filed a Consolidated Amended Complaint alleging numerous statutory and common law causes of action against Starbucks. Dkt. 38. Starbucks filed its Answer and Affirmative Defenses to the Consolidated Amended Complaint on May 7, 2012. Dkt. 42.

Following the Parties' filing of their Joint Litigation and Discovery Plan in April of 2012, counsel for the Parties undertook to discuss whether it might be possible to resolve the litigation. Initial conversations between counsel resulted in the production by Starbucks of detailed computer-held information regarding the circumstances in which Starbucks had applied Upcharges to purchases of scooped coffee beans of less than one pound, the types of beans on which such Upcharges had been charged, and the variations in Starbucks' Upcharge amounts and practices at different times. The practices and charges were not uniform over the time period relevant to the case. Considerable effort and discussion between the Parties was required in order to arrive at what Starbucks has now represented to be its best calculation, based on the

---

[3] Juanita Frisbie also filed a complaint against Starbucks based on the same facts and practices in California Superior Court on February 2, 2012 (No. RIC 1010629). That matter is presently stayed.

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

records available to it, of the total dollar value of all Upcharges that could have been recovered by the Plaintiffs if this case had been litigated to a final judgment.

At the conclusion of those discussions, on August 24, 2012 the Parties entered into a Memorandum of Understanding that outlined the broad terms of a proposed settlement of the action, including a provision that Class Counsel would have an opportunity to question a Starbucks business representative to confirm the information produced. On October 2, 2012, counsel for the Parties and representatives of Starbucks attended a half-day meeting in Seattle at which Class Counsel was able to question a Starbucks representative. The Parties then began writing the final terms of the Settlement Agreement which they have now submitted to the Court for preliminary approval.

### III.  TERMS OF THE PROPOSED SETTLEMENT

The complete details of the settlement are contained in the Settlement Agreement signed by the Parties on November 30, 2012. The following summarizes the Settlement Agreement's terms.

**A.    The Proposed Class**

The proposed Class consists of "All persons who between December 9, 2007 and November 7, 2011 made a purchase from any company-owned Starbucks store in the United States of scooped (i.e., not prepackaged) coffee beans in an amount less than one pound, other than half-pound purchases during January to March 2008 of types of coffee that had half-pound prices posted on menu boards during that time."

**B.    Relief for the Class**

The total amount of monetary relief to be provided by Starbucks under the settlement is $1,733,025 (the "Common Fund"). After the deduction of any external costs incurred by Starbucks to provide notice, attorneys' fees, costs, and administration expenses that may be approved by the Court, the balance of the Common Fund will be paid to the Class Members as detailed below. Any portion of the net Common Fund that the Claims Administrator is unable to

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

distribute to Class Members is to be paid as a *cy pres* award to the National Consumer Law Center.

Class Members are to be paid their shares of the settlement as follows. First, Starbucks will credit the My Starbucks Rewards[4] accounts of Class Members who are My Starbucks Rewards Members[5] in an amount equal to (i) the Parties' best estimate of the weighted average Upcharge of all transactions by Class Members in the Class Period ($0.45) multiplied by the number of Covered Purchases on each My Starbucks Rewards Member's account identified in Starbucks' business records, or (ii) Five Dollars ($5), whichever is *greater*. Data maintained in the ordinary course of business by Starbucks and produced to Class Counsel indicates that these payments to Class Members who are My Starbucks Rewards Members will be approximately $517,000.

Class Members who are not My Starbucks Rewards Members may submit a claim to the Claims Administrator accompanied by *either* (i) a receipt documenting one or more Covered Purchases or (ii) a sworn declaration attesting to having made one or more Covered Purchases. Class Members who submit receipts with their claims will receive payment that will be calculated as the amount of the Parties' best estimate of the weighted average Upcharge of all transactions by Class Members in the Class Period ($0.45) multiplied by the number of Covered Purchases for which a receipt is submitted, or Five Dollars ($5), whichever is *greater*. If there are insufficient funds remaining in the Common Fund to make all payments so calculated, each such Class Member will receive his or her *pro rata* share of the remaining amount of the Common Fund. Payment will be made via a Starbucks gift card, unless the Class Member in his or her Claim requests a check, and the gift card or check will be mailed to the postal address provided by the Class Member on the Claim form.

---

[4] My Starbucks Rewards is a customer loyalty program that allows customers to pay for purchases using a special Starbucks card that can be charged with money using a credit card.
[5] "My Starbucks Rewards Member" means a person now or formerly registered in the My Starbucks Rewards program.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Class Members who submit sworn declarations with their claims will receive payments that will be calculated as the amount of the Parties' best estimate of the same weighted average Upcharge ($0.45) multiplied by the number of Covered Purchases identified in the sworn declaration, or Ten Dollars ($10), whichever is *less*. If there are insufficient funds remaining in the Common Fund to make all payments so calculated after all other payments previously made under this Settlement Agreement, each such Class Member will instead receive his or her *pro rata* share of the remaining amount of the Common Fund. Payment will be made via a Starbucks gift card that will be mailed to the Class Member at the postal address provided on the Claim form.

Any portion of the Common Fund remaining after payments to the Class Members, attorneys' fees and costs, and notice and administrative expenses is to be paid as a *cy pres* award to the National Consumer Law Center. The National Consumer Law Center is a non-profit organization that works to protect consumers. *See* http://www.nclc.org. This focus makes it an appropriate *cy pres* recipient for this consumer protection lawsuit.

**C.      Settlement Notice, Claim, and Exclusion Procedures**

The Parties have agreed, subject to Court approval, to a notice plan which includes different types of notice depending on whether Class Members are identifiable. First, Starbucks has the ability to individually identify My Starbucks Rewards Members who made Covered Purchases using a registered My Starbucks Rewards card. Within thirty days of the Court granting Preliminary Approval of the settlement, Starbucks will email Class Members who are My Starbucks Rewards Members to notify them of the proposed settlement and their rights thereto. If there is no email address on file or the email notice cannot be delivered, Starbucks will follow-up with a notice by mail ten days later if the account has a postal address on file.

For Class Members who are not individually identifiable, Starbucks has created an online notice program, which features: (1) banner ads on third-party websites whose users are demographically similar to Starbucks customers; (2) targeted ads next to search results on

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Google and Bing search engines; and (3) reference to the settlement on the Starbucks homepage. All of the above will link to a website containing information about the Settlement Agreement and the rights of individual customers. Online notice is appropriate here because Starbucks customers are above-average Internet users. Data used by Starbucks indicates that more than 93 percent of Starbucks customers looked at or used the Internet in the past 30 days. A description of the notice program is attached to the Settlement Agreement as Exhibit C.

Any Class Member may submit a request for exclusion by the Opt-Out Deadline, which is 90 days following entry of the Preliminary Approval Order. Class Members or their counsel may submit written objections to the settlement within 90 days following entry of the Preliminary Approval Order.

Class Members who are My Starbucks Rewards Members will have their accounts credited within thirty days of the Settlement Date,[6] without needing to submit a claim. Starbucks will notify My Starbucks Rewards Members by email of these credits within five business days of crediting their accounts. If Starbucks has no email address for that person on file or if the email notice cannot be delivered, Starbucks will follow-up with a notice by mail if a postal address is on file for that account.

As described above, Class Members who are not My Starbucks Rewards Members will need to submit claims together with either a receipt or a sworn declaration.

## D. Release of Claims

In exchange for payment pursuant to the terms of the Settlement Agreement, Plaintiffs and all Class Members who do not opt-out of the settlement will release all claims against

---

[6] "Settlement Date" means the later of the date on which (1) the Final Order and Judgment becomes final by expiration of the time for appeal with no appeal being taken; (2) if the Final Order and Judgment is appealed, all appellate court proceedings, including intermediate appellate review and Supreme Court review, and whether by right or through a discretionary means, are completed and all time periods for further appellate court proceedings have passed and the Final Order and Judgment is affirmed in full; or (3) the Parties elect to proceed with the Settlement Agreement under subsection 11.2 if the Final Order and Judgment is appealed and is not affirmed in full. Settlement Agreement, subsection 1.24.

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT (MASTER CASE NO. C11-1985MJP) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Starbucks that were alleged in this case or that might reasonably arise out of the facts alleged in the case.

**E.    Attorneys' Fees and Costs and Settlement Administration**

The Settlement Agreement provides that Class Counsel may file a request for an award of attorneys' fees (not to exceed a total of 25% of the Common Fund) and their out-of-pocket costs not to exceed $12,000. Settlement Agreement ¶ 10. Any such fees and costs awarded by the Court will be paid by Starbucks from the Common Fund within fourteen days following entry of the Court's award of fees and costs. The fees of the Class Action Administrator that are approved by the Court will also be deducted from the Common Fund and will be paid out of the Common Fund before the Administrator makes payments to Class Members who are not My Starbucks Rewards Members. Starbucks will conduct the Notice Plan and will deduct from the Common Fund only the external costs it incurs to use its marketing vendors and place ads for the online advertising program, resulting in more money being available for Class Member payments under the Common Fund than if the Class Action Administrator were distributing notice.

**F.    Payment**

Class Members who are My Starbucks Reward Members shall have their accounts credited within thirty days after the Settlement Date, which is the date on which the Court's Final Order and Judgment becomes effective, following any appeals or the expiration of any time to file an appeal. Payments to Class Members who are not My Starbucks Reward Members shall be made within seven months after the Settlement Date, which is one month after the deadline for submission of Claims.

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS SETTLEMENT (MASTER CASE NO.
C11-1985MJP) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# IV.    ARGUMENT

## A.    Class Certification Is Proper

### 1.    Standards Governing Approval of Settlement Classes

In the context of granting preliminary approval of the settlement, the Court must make a threshold determination as to whether the proposed Class meets the requirements of Fed. R. Civ. P. 23 ("Rule 23"). *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Namely, the Court must determine whether the proposed class satisfies the Rule's requirements that: (1) the individuals in the settlement class are so numerous that joinder would be impracticable; (2) there is a question of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the absent settlement class members; and (4) plaintiffs and their counsel will adequately and fairly represent the interests of the absent settlement class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "In addition ... the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Id.* at 1022.

Based on the applicable standards, as further discussed below, the Court should certify the proposed Class for settlement purposes under Rule 23(b)(3) and appoint Class Counsel pursuant to Rule 23(g). Starbucks has agreed to certification for settlement purposes.

### 2.    The Class Satisfies the Requirements of 23(a)

The Class satisfies all the requirements of Rule 23(a).

First, the Class is sufficiently numerous to satisfy the requirements of Rule 23(a)(1). The Ninth Circuit has held that a class of 20 persons satisfies numerosity, *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010), and courts have generally found the numerosity requirement satisfied when a class includes at least 40 members. *Id.* Here, nearly 96,000 My Starbucks Rewards Members alone will be entitled to payment under the settlement, so the numerosity requirement is clearly met.

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Second, Rule 23(a)(2) is satisfied because there are questions of law common to the Class. "[C]ommonality only requires a single significant question of law or fact," the resolution of which is "apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 588-89 (9th Cir. 2012), citing *Wal-Mart Stores, Inc. v. Dukes,* ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011). Here, such common questions of fact include: the circumstances in which Starbucks applied Upcharges to purchases of scooped coffee beans of less than one pound, the types of beans on which such Upcharges were charged, and the variation in Upcharges at different times. Common questions of law include: whether Starbucks violated consumer protection statutes or committed contract or other common law violations in the manner in which it charged the Upcharges.

Third, the typicality requirement of Rule 23(a)(3) is satisfied because the claims raised by Plaintiffs are typical of the claims asserted on behalf of the Class. Typicality is established if "representative claims are . . . reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. The claims of the representative Plaintiffs in this case arise out of the same factual and legal circumstances as the claims of each Class Member. Like all other Class Members, Plaintiffs made Covered Purchases of less than one pound of whole-bean coffee that was not prepackaged and were charged Upcharges that were not disclosed on any signs or price tags.

Fourth, Plaintiffs and Class Counsel satisfy the adequacy requirement of Rule 23(a)(4), as well as the requirements of Rule 23(g). Rule 23(a)(4) requires that the parties fairly and adequately protect the interests of the class. The adequacy requirement is met where the representatives: (1) will vigorously prosecute the interests of the class through qualified counsel; and (2) have common, and not antagonistic interests, with unnamed members of the class. *Hanlon,* 150 F.3d at 1020. Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and types

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Here, the Court has already approved the qualifications of Plaintiffs' counsel Block & Leviton LLP, Shapiro Haber & Urmy LLP, and Byrnes Keller Cromwell LLP in its Order Consolidating Related Cases and Appointing Interim Co-Lead and Liaison Counsel filed March 12, 2012 (Dkt. 33), concluding that they were qualified to prosecute this action on behalf of the Plaintiffs and the Class. The fact that Starbucks has agreed to a settlement in which it will pay an amount equal to 100% of the alleged injury suffered by Class Members as the result of the activities detailed in the Consolidated Amended Complaint provides more than adequate evidence that they have adequately represented the class in this case. Plaintiffs' counsel expects to continue to expend significant resources to oversee and finalize the settlement.

Finally, the interests of the named Plaintiffs and absent Class Members are not antagonistic. Plaintiffs have the same claims to Upcharge reimbursement as other Class Members. Plaintiffs will receive their portions of the settlement on the same terms as all other Class Members. Class Counsel is aware of no conflicts between the named Plaintiffs and Class Members that would render them inadequate class representatives. For all these reasons, Plaintiffs and Class Counsel meet the adequacy requirement of Rule 23(a)(4), and Block & Leviton LLP and Shapiro Haber & Urmy LLP should be appointed as Class Counsel pursuant to Rule 23(g).

Thus, the Class satisfies all the requirements of Rule 23(a).

### 3. The Class Meets the Requirement of Rule 23(b)(3)

The Class meets the requirements of Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy." First, the Class satisfies the predominance requirement. "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT (MASTER CASE NO. C11-1985MJP) - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

representation." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Id*. Here, there is sufficient cohesion to warrant class adjudication. As discussed in detail above, this case by its nature turns on what legal conclusions should be drawn from the Upcharges that Starbucks charged on Covered Purchases, and that common issue predominates over any questions peculiar to individual Class Members.

Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class-wide basis is far "superior to other available methods for fairly and efficiently adjudicating the controversy." The alternative to a single class action would be allowing a windfall profit for Starbucks, since individual litigation of the hundreds or thousands of claims covered by this class action here would be both inefficient and non-viable. *Hanlon*, 150 F.3d at 1023 ("[M]any claims [that] could not be successfully asserted individually... would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Given the modest value of any one individual's claims and in the face of such common evidence and legal questions, it would be particularly inefficient to require individual adjudications here.

**B.     Preliminary Approval of the Settlement Is Appropriate**

The approval of a class action settlement is a two-step process under Fed. R. Civ. P. 23(e). *Armstrong v. Bd. of School Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998). First, the Court must decide whether to grant preliminary approval of the settlement and order that notice of the terms of the settlement be sent to class members to allow them an opportunity to object to the settlement or to opt out of it pursuant to Fed. R. Civ. P. 23(e) or 23(c). In considering whether to grant preliminary approval, the Court must determine whether the proposed settlement is "within the range of possible [final] approval." *Id*. The purpose of the preliminary approval process is to

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

determine whether the proposed settlement, when taken as a whole, appears fundamentally fair, adequate, and reasonable to the Class. *See Dunleavy v. Nadler* (*In re Mego Fin. Corp. Secs. Litig.*), 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d at 1026. This decision is committed to the Court's sound discretion. *See Hanlon*, 150 F.3d at 1026; *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied, Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1988).

In exercising its discretion at the preliminary approval stage, the Court should consider a variety of factors, including (1) whether the settlement was the product of collusion between the parties; (2) the strength of Plaintiffs' case; (3) the risk, expense, complexity, and duration of further litigation; (4) the risk of maintaining class certification; (5) the amount of settlement; (6) investigation and discovery; and (7) the experience and views of counsel. *Hanlon*, 150 F.3d at 1026. The Court also applies its discretion in light of the judicial policy favoring settlement of complex class action litigation. *Officers for Justice*, 688 F.2d at 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation[.]").

As discussed below, application of the relevant factors here supports preliminary approval of this Settlement Agreement.

### 1. The Settlement Is the Product of Serious, Informed, Arms-Length Negotiation

As settlement inherently involves a negotiation between adversaries and compromise of the claims and defenses asserted, the Court should generally presume fairness at the preliminary stage of approval of a class action settlement so long as the settlement is recommended by experienced class counsel after arms-length bargaining. *See, e.g. Hanlon*, 150 F.3d at 1027 (stating that courts are deferential to "the private consensual decisions of the parties"); *Hughes v. Microsoft Corp.*, Nos. C93-0178C, C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery."). Moreover, this Court has recognized the "unique ability of class counsel to assess potential risks and rewards of litigation." *Hughes,* 2001 WL 34089697, at *7.

In this case, the settlement is the result of intensive, arm's-length negotiations that were based on the production and analysis of numerous data points demonstrating the actual amount of Upcharges during the Class Period. It also involved experienced counsel well-versed in both the substantive law and class action litigation procedures and familiar with the legal and factual issues of this case in particular. Negotiations were conducted after Plaintiffs obtained and reviewed documents obtained through a Public Records Request and after extensive analysis of damages information provided by Starbucks. The process of negotiations and follow-up conference calls and one in-person meeting between Plaintiffs' counsel and defense counsel spanned some seven months, from April until November of 2012.

**2.    The Settlement Represents One Hundred Percent of Possible Recovery**

The settlement negotiated in this case represents what Starbucks estimates to be one hundred percent of all Upcharges collected by Starbucks on Covered Purchases during the Class Period. In deciding whether the proposed Settlement Agreement is adequate and falls within the range of possible approval, courts look to the strength of plaintiffs' claims, the risks plaintiffs faced in pressing forward with their claims, and "plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.,* 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). The settlement's adequacy must be judged as "a yielding to absolutes and an abandoning of highest hopes . . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice,* 688 F.2d at 624 (internal citations and quotations omitted)).

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Here there was no compromise regarding the amount of the Class Members' loss-in-fact recovery, which is 100 percent of all possible loss the Class Members suffered. Thus, under any analysis, the Settlement Agreement should be seen as "fair, non-collusive and within the range of possible final approval." *Wilson v. Venture Fin. Group, Inc.*, No. C09-5768BHS, 2011 WL 219692, at *2 (W.D. Wash. Jan. 24, 2011).

### 3. The Risk, Expense, and Likely Duration of Further Litigation Support Preliminary Approval

Although Starbucks disagrees, Plaintiffs contend that Starbucks violated consumer protection statutes and committed other common law violations when it charged the undisclosed Upcharges to Class Members. While Plaintiffs contend that these Upcharges constituted violations of the common law and the various statutes alleged in the Consolidated Amended Complaint, they recognize that a finder of fact or the Court could reach a different conclusion. A trier of fact might determine that the Upcharge did not violate the relevant laws at issue because, even if there had been no signage regarding the Upcharge and even if the receipt had not identified the Upcharge as a separate line item, the price could be seen as having effectively been disclosed at the time of purchase, or a barista might have orally disclosed it, or a purchaser might have made the purchase anyway even if he or she knew the amount of the Upcharge. Without conceding that this conclusion would be correct or appropriate, Plaintiffs recognized the risk of a possible adverse outcome.

Also, while Plaintiffs vigorously contend that the claims in this case are appropriate for class certification should the case not be settled, Starbucks would almost certainly contest nationwide class certification. The Settlement Agreement avoids the risk that Plaintiffs would not prevail on their Rule 23 motion. This Settlement Agreement avoids the uncertainty to both parties that arises from these issues as well as the expense and time involved in bringing these claims to judgment, while at the same time ensuring that Class Members receive fair consideration now for a release of their claims.

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT (MASTER CASE NO. C11-1985MJP) - 16

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

### 4. The Settlement Consideration and Plan of Allocation Are Fair and Reasonable

The settlement sum is fair and reasonable in light of the risks of further litigation. The amount of the settlement constitutes one hundred percent of the Upcharges paid by consumers making Covered Purchases during the Class Period. Further, this settlement offers relief to Class Members who no longer have receipts demonstrating that they made a Covered Purchase during the Class Period. Class Members without receipts would have had a much more difficult time obtaining any recovery outside of this class action. Under the circumstances of the case, the amount of the settlement is fair, adequate, and reasonable. *See Dunleavy v. Nadler*, 213 F.3d at 459 (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks).

### 5. The Attorneys' Fees and Costs that Plaintiffs Intend to Request Are Reasonable

The Settlement Agreement provides that Class Counsel may petition the Court for a total award of fees and costs not to exceed 25% of the total amount paid under the settlement. Settlement Agreement ¶ 10.1. Plaintiffs submit that such a fee would be fair and reasonable given the risk they assumed at the time they filed this litigation, the time and expenses that Class Counsel have devoted to this case and the result they have achieved for the Class. The 25% fee that Class Counsel anticipates requesting would be well within the range of reasonableness under Ninth Circuit authority. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (twenty-five percent of the recovery is "benchmark" for attorneys' fees under the percentage of recovery approach.); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (usual common fund recovery is 20-30 percent). Class counsel anticipates submitting cross-check lodestar information to the Court at the time of the Fairness Hearing (when it will consider their application for fees and expenses) and that such information will confirm that a 25% fee is appropriate under the circumstances of this case. The proposed notice informs Class Members of the maximum fee award that may be requested by Class Counsel and makes clear

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

that Class Members may object to some or all of the settlement or opt out of it entirely. See

Exhibit C to the Settlement Agreement. Class Counsel will submit a separate motion to the

Court detailing its request for fees and costs prior to the Fairness Hearing. Approval of this

motion will be subject to the Court's discretion. *Hanlon*, 150 F.3d at 1030.

### 6. The Court Should Appoint Simpluris, Inc. to Administer Settlement Claims

To ensure the fair and efficient administration of the settlement, the Court should appoint

Simpluris, Inc., an experienced claims administrator, to administer claims under the Settlement

Agreement. In return for its work, Plaintiffs anticipate that Simpluris, Inc. will be paid a

maximum of $49,000 from the Common Fund to compensate it for processing claims,

communicating with Class Members and counsel for both sides in connection with the settlement

process and the payments to be made under the settlement, as well as all tax reporting and other

administrative functions. Starbucks will conduct the Notice Plan and will deduct from the

Common Fund only the external costs it incurs to use its marketing vendors and place ads for the

online advertising program, resulting in more money being available for Class Member

payments under the Common Fund than if the Class Action Administrator were distributing

notice.

### 7. The Proposed Notice Is Adequate and the Court Should Order Distribution of the Notice to Class Members

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class

members who would be bound by the propos[ed Settlement]." Fed. R. Civ. P. 23(e)(1). "[T]he

court must direct to class members the best notice that is practicable under the circumstances

. . . ." *Simpao v. Gov't of Guam*, 369 F. App'x 837, 838 (9th Cir. 2010). Notice is satisfactory

"if it generally describes the terms of the settlement in sufficient detail to alert those with adverse

viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen.

Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted).

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS SETTLEMENT (MASTER CASE NO.
C11-1985MJP) - 18

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The proposed notice and Notice Plan satisfy the requirements of Rule 23(e) and due process. The notice clearly explains the nature of the action and the terms of settlement. It identifies the amount to be paid by Starbucks, the settlement payment that the Class Member will receive if he or she participates in the settlement, how settlement payments will be determined and calculated and how the Class Member may claim his or her portion of the settlement. It further explains how to exclude oneself from the settlement, how to object to the settlement, and what impact a Class Member's action or inaction will have on the release of claims.

The proposed Notice Plan includes email notice for My Starbucks Reward Members. This type of notice is appropriate where My Starbucks Reward Members have themselves chosen to participate in a program through which Starbucks primarily communicates with participants electronically. *See Browning v. Yahoo! Inc.*, No. C04-01463HRL, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) (Email notice was "particularly suitable in this case, where Settlement Class Members' allegations arise from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar and comfortable with email and the Internet."). Moreover, where the email is undeliverable or an email address is unavailable, Starbucks will follow-up with a notice by standard mail if a postal address is on file. *See id.* (notice sufficient where "in the event that an Email Notice sent to a Settlement Class Member is bounced back as undeliverable, the Amended Settlement Agreement provides for notice by standard mail").

For Class Members who are not My Starbucks Reward Members, notice will be provided via: (1) banner ads on third-party websites whose users are demographically similar to Starbucks customers; (2) targeted ads next to search results on Google and Bing search engines; and (3) reference to the settlement on the Starbucks homepage. This type of notice is an appropriate manner of reaching non-identifiable Class Members. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 863 (9th Cir. 2012) (notice included publication in "targeted sources based on market research about consumers who purchased the products," including numerous websites) (internal quotation

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

marks omitted); *In re Ferrero Litig.*, No. 11-cv-00205H, 2012 WL 284265, at *3 (S.D. Cal. Jan. 23, 2012) (notice included publication on third-party websites). *See also Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 569 (S.D. Iowa 2011) (notice that included email to customers and notice via the company's Facebook page was sufficient). This is the best notice practicable given that the profile of a typical Starbucks customer suggests that they are particularly likely to be regular Internet users. *See* Exhibit C to the Settlement Agreement.

Because the content of the notice and the method for distributing it to the Class Members fulfill the requirements of Rule 23 and due process, the Court should approve the proposed Notice Plan.

## C.    The Court Should Set a Fairness Hearing

Finally, the Court should set a date for the Fairness Hearing to consider final approval of the settlement, the award of attorneys' fees and costs, and the fee to be paid to the Class Action Administrator. A proposed schedule for the events leading up to that hearing is contained in the Proposed Preliminary Approval Order (Settlement Agreement Exhibit D) and is set forth below.

The Parties propose the following schedule regarding notice to the Class and final approval of the Settlement Agreement:

| Event | Time for Compliance |
|---|---|
| (1) Date by which notice will be emailed to My Starbucks Rewards Members and the online notice program begun | Within 30 days of entry of the Preliminary Approval Order. |
| (2) Deadline to opt-out | Ninety days after entry of the Preliminary Approval Order. |
| (3) Deadline to submit objections | Ninety days after entry of the Preliminary Approval Order. |
| (4) Deadline for filing motion for final approval, Plaintiffs' motion for attorneys' fees and costs, and administration fees and costs | To be set by the Court at the time of Preliminary Approval. |

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

| | |
|---|---|
| (5) Final Approval Hearing | To be set by the Court at the time of Preliminary Approval. |
| (6) Claims deadline | Six months after the Settlement Date. |
| (7) Deadline for payment to Class Members | One month after the Claims Deadline. |

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement Agreement; (2) conditionally certify the Class for settlement purposes; (3) approve the Notice Plan and Claims Forms; (4) appoint Simpluris, Inc. as the Claims Administrator pursuant to the Settlement Agreement; (5) appoint Block & Leviton LLP and Shapiro Haber & Urmy LLP as Class Counsel and Byrnes Keller Cromwell LLP as Liaison Counsel; and (6) schedule a Fairness Hearing regarding final approval of the Settlement Agreement, administration fees, and Class Counsel's request for attorneys' fees and costs.

DATED this 30th day of November, 2012.

BYRNES KELLER CROMWELL LLP


By /s/ John A. Tondini
  John A. Tondini, WSBA #19092
  1000 Second Avenue, 38th Floor
  Seattle, WA 98104
  Telephone: (206) 622-2000
  Facsimile: (206) 622-2522
  jtondini@byrneskeller.com

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Jason M. Leviton, WSBA #34106
Jeffrey C. Block (*pro hac vice*)
Scott A. Mays (*pro hac vice*)
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 1303
Boston, MA  02110
Telephone:  (617) 398-5600
Facsimile:  (617) 507-6020

Thomas V. Urmy, Jr. (*pro hac vice*)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA  02109
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
turmy@shulaw.com
***Attorneys for Plaintiffs and the Putative Class***

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 30th day of November, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David J. Burman
Rebecca S. Engrav
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
dburman@perkinscoie.com
rengrav@perkinscoie.com

***Counsel for Defendant Starbucks Corporation***

/s/ John A. Tondini
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522

PLAINTIFFS' MOTION IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS SETTLEMENT (MASTER CASE NO.
C11-1985MJP) - 23

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**APPENDIX 1**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE STARBUCKS CONSUMER LITIG. | No. 2:11-cv-01985-MJP |
| | **STIPULATION AND SETTLEMENT AGREEMENT** |

**WHEREAS,** by order dated March 12, 2012, this Court consolidated into this action two

class actions previously filed in the U.S. District Court for the Western District of Washington by

(i) Bonnie Kurnick, and (ii) Jonah Cannon, James Kaen, and Rachel Wassel, bearing Civil Action

Numbers 2:11-cv-1985-MJP and 2:12-cv-00169-MJP respectively, on behalf of persons who

purchased "scooped" coffee beans in amounts of less than one pound at company-owned Starbucks

stores in the United States and paid an unposted differential price or Upcharge on such purchases as

compared to one-pound purchases, and appointed the law firms Block & Leviton LLP and Shapiro

Haber & Urmy LLP as Interim Co-Lead Counsel and Byrnes Keller Cromwell LLP as Liaison

Counsel for the putative Class; and

**WHEREAS,** Class Counsel has conducted a significant investigation and analyzed and

evaluated the merits of the claims made to date against Starbucks in the Actions along with

documents and data supplied by Starbucks; and

**WHEREAS,** Starbucks offers coffee beans for sale in sealed, prepackaged bags in increments of one pound and, on occasion, half a pound, and Starbucks also accommodates customer requests for less than a pound of coffee beans by "scooping" the desired amount, usually by opening a retail one-pound prepackaged bag and measuring out the amount desired and either setting aside for future sale or discarding the remaining amount in the bag; and

**WHEREAS,** from at least December 9, 2007 until November 7, 2011, Starbucks charged a higher price per pound for purchases of less than a pound of scooped coffee beans than it charged for a one-pound bag of the same type of coffee, and except for half-pound purchases of certain types of coffee beans from January to March 2008, Starbucks did not post in its stores or on packages the differential price or Upcharge for purchases of scooped coffee beans in amounts less than one pound; and

**WHEREAS,** the documents and data produced to Class Counsel by Starbucks, consisting of data maintained in the ordinary course of business by Starbucks, indicate that, to the best of Starbucks's ability to determine based on reasonably available data, Starbucks received approximately $3,308,704.91 in Upcharges in connection with purchases of less than one pound of coffee beans at company-owned Starbucks stores in the United States during the Class Period (the weighted average Upcharge for one transaction during this period was $0.45), of which approximately $77,860.27 was for half-pound scooped coffee bean purchases during certain months in 2008 when the prices for such half-pound purchases were posted on menu boards and approximately $1,497,818.93 was for half-pound prepackaged bags that had the half-pound price marked on the bags or on signs, and Starbucks therefore received approximately $1,733,025 in Upcharges on scooped coffee bean purchases in amounts less than one pound that did not have a price posted during the Class Period at company-owned U.S. Starbucks stores; and

**WHEREAS,** Class Counsel has considered the impact of this Settlement Agreement on Plaintiffs and the Class, and based upon analysis and evaluation of a number of factors and

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 2

recognizing the substantial risks of continued litigation, including the possibility that the Actions, if not settled now, might not result in any recovery whatsoever for the Class or might result in a recovery that is less favorable to the Class and that any such recovery might not occur for several years, Class Counsel are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate and that this Settlement Agreement is in the best interests of the Class; and

**WHEREAS,** Starbucks has denied and continues to deny Plaintiffs' allegations and all charges of wrongdoing or liability of any kind whatsoever asserted or which could have been asserted in the Actions; and

**WHEREAS,** although Plaintiffs believe their claims possess merit and although Starbucks vigorously disputes such claims, without in any way acknowledging any fault or liability, the Parties have agreed to enter into this Settlement Agreement as an appropriate compromise of Plaintiffs' and Class Members' claims in order to put to rest all controversy and to avoid the uncertainty, risk, expense, and burdensome, protracted, and costly litigation that would be involved in prosecuting and defending the Actions;

**NOW, THEREFORE, THIS SETTLEMENT AGREEMENT** is entered into as of the last date subscribed below by and between (1) Plaintiffs in the Actions for themselves and on behalf of the Class; and (2) Starbucks.

Subject to Court approval and the other conditions set forth herein, it is hereby agreed by the Parties that in consideration of the undertakings, promises, and payments set forth in this Settlement Agreement and upon the entry by the Court of a Final Order and Judgment approving the Settlement Agreement and directing the implementation of its terms and conditions, the Actions shall be settled and compromised upon the terms and conditions set forth below.

## 1.  DEFINITIONS

As used in this Settlement Agreement and the attached exhibits, in addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall be defined as set forth below:

**1.1**   **"Actions"** means *In re Starbucks Consumer Litigation*, No. 2:11-cv-01985-MJP (W.D. Wash.) (consolidated amended complaint filed Apr. 16, 2012), which consolidated the separately filed cases *Bonnie Kurnick v. Starbucks Corporation and Does 1–10*, No. 2:11-cv-01985-MJP (W.D. Wash.) (complaint filed Nov. 29, 2011), and *Jonah Cannon, James Kaen, and Rachel Wassel v. Starbucks Corporation*, No. 2:12-cv-00169-MJP (W.D. Wash.) (complaint filed Jan. 30, 2012); and *Rachel Wassel v. Starbucks Corporation*, No. 11-4503 (Sup. Ct. Mass.) (complaint filed Dec. 9, 2011; first amended complaint filed Jan. 24, 2012; voluntary dismissal without prejudice filed Feb. 22, 2012).

**1.2**   **"Claim"** means a request for payment from a Class Member.  To be valid, a Claim must be substantially in the form of the attached Exhibit A and must meet all the requirements of subsection 3.4.

**1.3**   **"Class"** means all persons who made a Covered Purchase between December 9, 2007 and November 7, 2011 from any company-owned Starbucks store in the United States. Excluded from the Class are the following: (1) Starbucks Corporation and any entity in which Starbucks Corporation has a controlling interest and their respective legal representatives, officers, directors, assigns, and successors; (2) the judges to whom the Actions are assigned and any member of the judges' staff and immediate family; and (3) any person who, in accordance with the terms of this Settlement Agreement including section 6, submits a timely, properly executed, and valid request for exclusion from the Class.

**1.4**   **"Class Action Administrator"** means Simpluris, Inc.

**1.5**   **"Class Counsel"** means Block & Leviton LLP and Shapiro Haber & Urmy LLP as Co-Lead Counsel and Byrnes Keller Cromwell LLP as Liaison Counsel.

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 4

**1.6** **"Class Member"** means a member of the Class.

**1.7** **"Class Period"** means the period beginning December 9, 2007 and ending November 7, 2011.

**1.8** **"Common Fund"** means the total settlement amount of One Million Seven Hundred Thirty-Three Thousand Twenty-Five Dollars and Seventy-One Cents ($1,733,025.71), as provided in subsection 3.2, inclusive of settled claims, administrative expenses, attorneys' fees and costs.

**1.9** **"Court"** means the United States District Court for the Western District of Washington.

**1.10** **"Covered Purchase"** means a purchase during the Class Period of scooped (i.e., not prepackaged) coffee beans in an amount less than one pound, other than half-pound purchases during January to March 2008 of types of coffee that had half-pound prices posted on menu boards during that time.

**1.11** **"Day"** or **"Days"** means calendar days.

**1.12** **"Fairness Hearing"** means the settlement approval hearing(s) to be conducted by the Court to make a final determination of whether this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class as a whole.

**1.13** **"Final Order and Judgment"** means the order and judgment entered by the Court substantially in the form of the attached Exhibit B, approving this Settlement Agreement as fair, reasonable, and adequate and in the best interests of the Class as a whole, as well as making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Settlement Agreement.

**1.14** **"My Starbucks Rewards Member"** means a person now or formerly registered in the My Starbucks Rewards program, the current operation of which is described at http://www.starbucks.com/card/rewards/rewards-program-ts-and-cs.

**1.15** "**Notice Plan**" means the plan pursuant to which notice of this proposed settlement will be given to Class Members, in a form substantially similar to the attached Exhibit C.

**1.16** "**Objection Deadline**" means the deadline by which any Class Member must file and serve, under section 7 and as set forth in the Preliminary Approval Order, any objections to the Settlement Agreement or to Class Counsel's request for attorneys' fees and costs. The Objection Deadline shall be no more than ninety Days after entry of the Preliminary Approval Order.

**1.17** "**Opt-Out Deadline**" means the deadline by which a person who otherwise falls within the definition of the Class must request exclusion from the Class and thereby opt out of the settlement under section 6 and as set forth in the Preliminary Approval Order. The Opt-Out Deadline shall be no more than ninety Days after entry of the Preliminary Approval Order.

**1.18** "**Party**" or "**Parties**" means Plaintiffs, Class Members, and Starbucks, or any of them.

**1.19** "**Plaintiffs**" means the named Plaintiffs in the Actions.

**1.20** "**Preliminary Approval Order**" means the Court's Order granting preliminary approval of this Settlement Agreement, approving the Notice Plan, setting forth the Opt-Out and Objection Deadlines and a schedule for briefing regarding the fairness of the settlement and the date of the Fairness Hearing, substantially in the form of the attached Exhibit D.

**1.21** "**Releasing Party**" or "**Releasing Parties**" means Class Members and their respective heirs, administrators, devisees, predecessors, successors, attorneys, representatives, shareholders, partners, directors, officers, owners, affiliates, subrogees, assignees, or insurers.

**1.22** "**Settled Claim**" means any claim, liability, right, demand, suit, matter, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description that the Releasing Parties had or may have against Starbucks that arise out of or relate to the facts alleged in the Actions, whether

known or unknown, suspected or unsuspected, asserted or unasserted, accrued or which may thereafter accrue, regardless of legal theory and the type of equitable relief or damages claimed.

**1.23** **"Settlement Agreement"** means this Settlement Agreement.

**1.24** **"Settlement Date"** means the later of the date on which (1) the Final Order and Judgment becomes final by expiration of the time for appeal with no appeal being taken; (2) if the Final Order and Judgment is appealed, all appellate court proceedings, including intermediate appellate review and Supreme Court review, and whether by right or through a discretionary means, are completed and all time periods for further appellate court proceedings have passed and the Final Order and Judgment is affirmed in full; or (3) the Parties elect to proceed with the Settlement Agreement under subsection 11.2 if the Final Order and Judgment is appealed and is not affirmed in full.

**1.25** **"Settlement Website"** means a website located at the URL www.starbucks.com/scoopedcoffeesettlement and approved by the Court as part of the Notice Plan that provides information about the Settlement Agreement to Class Members and others.

**1.26** **"Starbucks"** means Starbucks Corporation, which sometimes does business as Starbucks Coffee Company, and its successors, assigns, predecessors, parents, subsidiaries, divisions, departments, or affiliates; and any of its or their past or present officers, directors, stockholders, partners, agents, servants, subrogees, insurers, employees, or representatives.

**1.27** **"Starbucks' Counsel"** means Perkins Coie LLP.

**1.28** **"Upcharge"** means the difference between the price actually charged by Starbucks for a Covered Purchase and the price that would have been charged for the same amount of coffee beans if Starbucks had charged the *pro rata* portion of the posted one-pound price of the same type of coffee beans at the time of the sale.

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 7

## 2.   SETTLEMENT PURPOSES ONLY

**2.1**    This Settlement Agreement is for settlement purposes only.  To the fullest extent permitted by law, neither the fact of nor any provision contained in this Settlement Agreement or its attachments nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as an admission of the validity of any claim or any fact alleged by Plaintiffs in the Actions or in any other pending or subsequently filed action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Starbucks or as an admission by any of the Parties of the validity or lack thereof of any claim, allegation, or defense asserted in the Actions or in any other action.

**2.2**    Starbucks conditionally agrees and consents to certification of the Class for settlement purposes only and within the context of this Settlement Agreement only.  If this Settlement Agreement, for any reason, is not finally approved by the Court or is otherwise terminated, Starbucks reserves the right to assert any and all objections and defenses to certification of any class and this Settlement Agreement shall not be offered by anyone as evidence in support of a motion to certify a class.

## 3.   RELIEF

**3.1**    Starbucks has advised Plaintiffs and hereby represents to the Court that it has already made changes to its pricing practices related to the sale of scooped coffee beans in amounts less than one pound that have been challenged in the Action; specifically, it has eliminated all such Upcharges and has no intent to charge them again, and thus no prospective relief is necessary or appropriate.

**3.2**    The total amount of monetary relief Starbucks shall provide under this Settlement Agreement is the Common Fund of One Million Seven Hundred Thirty-Three Thousand Twenty-Five Dollars and Seventy-One Cents ($1,733,025.71), inclusive of settled claims, administrative expenses, attorneys' fees, and costs.  Starbucks shall have no other financial obligation under this Settlement Agreement.  In addition, under no circumstances will Starbucks have any liability for taxes or tax expenses under this Settlement Agreement.  Within fourteen Days of entry of the Final

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 8

Order and Judgment, and after deducting any external costs previously incurred by Starbucks to provide notice under section 5, Starbucks will deposit the Common Fund in an interest-bearing account maintained by Starbucks. The interest earned on the deposit shall accrue to the benefit of the Common Fund. Starbucks will provide to Class Counsel and if requested by the Court, to the Court, documentation of all disbursements after such deposit, including any payment of attorneys' fees and costs to Class Counsel under section 10 and transfers from the Common Fund back to Starbucks to account for credits and gift cards issued under subsections 3.3 and 3.6.

3.3     Within thirty Days of the Settlement Date, Starbucks shall credit the My Starbucks Rewards accounts of Class Members who are My Starbucks Rewards Members (a) in an amount calculated by multiplying the Parties' best estimate of the weighted average Upcharge of all transactions by Class Members in the Class Period ($0.45) by the number of Covered Purchases on each My Starbucks Rewards Member's account identified in Starbucks' business records or (b) Five Dollars ($5.00), whichever is greater. Within five business days of crediting the accounts, Starbucks shall send an email to the email address on file for each My Starbucks Rewards account notifying the My Starbucks Rewards Member that the credit has been issued. If no email address is available or if the email is undeliverable, Starbucks will send notification by U.S.P.S. mail to the My Starbucks Rewards account's postal address that Starbucks has on file, if any. Credits under this subsection will be issued to My Starbucks Rewards accounts even if the account does not have an email address or postal address on file with Starbucks and even if notification under these methods is undeliverable. My Starbucks Rewards Members will receive only the relief specified by this subsection and may not submit claims under subsections 3.4 and 3.6. Data maintained in the ordinary course of business by Starbucks and produced to Class Counsel indicates that payments to My Starbucks Rewards Members as calculated in this subsection will be approximately $517,000.00.

**3.4**     Class Members who are not My Starbucks Rewards Members may submit a Claim. To be a valid Claim entitling the Class Member to any relief, the Claim must (a) be in a form agreed to by the Parties and approved by the Court and substantially in the form of the attached Exhibit A; (b) be mailed to the Class Action Administrator, postage prepaid, postmarked no later than six months after the Settlement Date; (c) list the Class Member's complete name, postal address, telephone number, and (if available) email address; and (d) be accompanied by *either* (i) an actual or true and correct copy of a receipt for each Covered Purchase asserted by the Class Member or (ii) a sworn declaration under penalty of perjury substantially in the form of the attached Exhibit A that sets forth the location or locations, approximate date(s), and approximate number of times the Class Member made a Covered Purchase.

**3.5**     Before the Class Action Administrator makes the payments described in subsection 3.6 to Class Members who submit valid Claims, the Class Action Administrator's costs of receiving, processing, and evaluating Claims and making the payments to Class Members shall be paid by Starbucks from the Common Fund to the Class Action Administrator. The Class Action Administrator will provide documentation of its costs to Class Counsel and Starbucks' Counsel and if requested by the Court, to the Court. The Class Action Administrator's costs will not exceed $49,000.

**3.6**     Class Members who submit valid Claims that meet all the requirements of subsection 3.4 shall be paid from the Common Fund as follows.

      **(a)**     If a valid Claim is accompanied by an actual or true and correct copy of a receipt for one or more Covered Purchases, the Class Member's payment will be (i) calculated by multiplying the Parties' best estimate of the weighted average Upcharge of all transactions by Class Members in the Class Period ($0.45) by the number of Covered Purchases for which a receipt is submitted or (ii) Five Dollars ($5.00), whichever is greater. If there are insufficient funds remaining in the Common Fund to make all payments so calculated, each such Class Member will

instead receive his or her *pro rata* share of the remaining amount of the Common Fund. Payment will be made via a Starbucks gift card unless the Class Member in his or her Claim requests a check and will be mailed to the postal address provided on the Claim form.

        **(b)**    If a valid Claim is accompanied by a Class Member's sworn declaration and no receipt, and if funds remain in the Common Fund after calculating the payments described in subsection 3.6(a), the Class Member's payment will be (i) calculated by multiplying the Parties' best estimate of the weighted average Upcharge of all transactions by Class Members in the Class Period ($0.45) by the number of Covered Purchases identified in the sworn declaration or (ii) Ten Dollars ($10.00), whichever is less. If there are insufficient funds remaining in the Common Fund to make all payments so calculated after determination of all other payments under this Settlement Agreement, each such Class Member will instead receive his or her *pro rata* share of the remaining amount of the Common Fund. Payment will be made via a Starbucks gift card and will be mailed to the postal address provided on the Claim form.

    **3.7**    Payments under subsection 3.6 shall be made within seven months after the Settlement Date, which is one month after the deadline for submission of Claims. Any portion of the Common Fund that has not been distributed in accordance with the terms of this Settlement Agreement by seven months after the Settlement Date shall be paid as a *cy pres* award to the National Consumer Law Center ("NCLC")[1] as soon as practicable after the other payments described in this Settlement Agreement have been made.

## 4.    **MOTION FOR PRELIMINARY APPROVAL**

    **4.1**    As soon as practicable after execution, the Parties shall jointly submit this Settlement Agreement to the Court and request that the Court enter the Preliminary Approval Order.

---

[1] The mission of the NCLC is to protect individuals from unfair and exploitive transactions. *See* http://www.nclc.org/.

18177-0259/LEGAL25273412.1

**5.** **NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND FAIRNESS HEARING**

**5.1** The Notice Plan and the schedule for the final Fairness Hearing shall be approved by the Court in the Preliminary Approval Order. Starbucks shall activate the Notice Plan no later than thirty Days after the Court enters the Preliminary Approval Order.

**5.2** The form and specific contents of the Notice Plan shall be agreed upon by the Parties and implemented by Starbucks in the manner directed by the Court. All external costs incurred by Starbucks regarding notice, including the costs of creating and implementing the Notice Plan, shall be paid out of the Common Fund to the extent and in the manner authorized by the Court. Starbucks shall provide documentation of all such costs to Class Counsel in the manner directed by the Court.

**5.3** The Notice Plan shall provide notice of the right to request exclusion from the Class or, alternately, to object to the settlement and shall state that the Settlement Website should be monitored for developments.

**5.4** Within ten Days after filing this Settlement Agreement with the Court, Starbucks shall notify the appropriate state and federal officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**6.** **REQUESTS FOR EXCLUSION FROM THE CLASS**

**6.1** Any person who otherwise falls within the definition of the Class may request exclusion in the manner described below. Anyone who properly requests exclusion shall not be a Class Member and shall not be entitled to relief under and shall not be affected by this Settlement Agreement or any relief provided by this Settlement Agreement and shall have no right to file any appeal from any order or judgment entered by the Court.

**6.2** A request for exclusion will be valid if it is (a) in writing; (b) signed by the requesting person under penalty of perjury; and (c) mailed to Class Counsel postage prepaid and

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 12

postmarked prior to the Opt-Out Deadline. No "mass" or "class" requests for exclusion are permitted.

**6.3** The Parties shall have the right to challenge the timeliness and validity of any exclusion request. Class Counsel shall also have the right to effectuate the withdrawal of any exclusion request submitted in error and any exclusion request that the submitter wishes to withdraw for purposes of participating in the settlement as set forth in this Settlement Agreement. The Court shall determine whether any contested exclusion request is valid.

**6.4** Within five Days after the Opt-Out Deadline, Class Counsel will provide to Starbucks and the Class Action Administrator a list of any persons who have validly requested exclusion from the Class. In the event that the number of those opting out exceeds a level separately agreed to by Class Counsel and Starbucks, Starbucks may elect to terminate this Settlement Agreement on the ground that exclusion at that level threatens to frustrate the essential purpose of this Settlement Agreement. Starbucks may exercise its right to terminate under this subsection by notifying Class Counsel of its election no later than seven Days after receipt of the list of those opting out.

7. **OBJECTIONS**

**7.1** Any Class Member may object to the fairness, reasonableness, or adequacy of the Settlement Agreement. A person who validly requests exclusion from the Class may not file an objection to the Settlement.

**7.2** Any Class Member who wishes to object to any aspect of the Settlement Agreement must, prior to the Objection Deadline, file with the Court and provide a copy to Class Counsel and Starbucks' Counsel using a method authorized by subsection 13.10 a written statement that must include (1) a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 13

his or her objection(s); (2) the Class Member's name, email and postal address, and telephone number; and (3) information demonstrating that the Class Member is entitled to be included as a member of the Class.

**7.3**     Class Members may raise objection(s) either on their own or through an attorney hired at their own expense. If a Class Member hires an attorney other than Class Counsel for representation, the attorney must, prior to the Objection Deadline, file a notice of appearance with the Court and provide a copy of the notice to Class Counsel and Starbucks' Counsel using a method authorized by subsection 13.10. Class Members or their attorneys intending to make an appearance at the Fairness Hearing must, prior to the Objection Deadline, file a notice of intention to appear with the Court and provide a copy of the notice to Class Counsel and Starbucks' Counsel using a method authorized by subsection 13.10.

**7.4**     Any Class Member who fails to comply with this section 7 shall waive and forfeit any and all rights he or she may have to appear separately and/or object and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders, and judgments in the Action and shall have no right to file any appeal from any order or judgment entered by the Court.

**8.**     <u>**EXCLUSIVE REMEDY; DISMISSAL OF ACTION; JURISDICTION OF COURT**</u>

**8.1**     This Settlement Agreement shall provide the sole and exclusive remedy for any and all Settled Claims of Class Members. Upon entry of the Final Order and Judgment, each Class Member shall be barred from initiating, asserting, or prosecuting against Starbucks any Settled Claims. In the event that any Class Member attempts to prosecute an action in contravention of the Final Order and Judgment and this Settlement Agreement, counsel for any of the Parties may forward this Settlement Agreement and the Final Order and Judgment to such Class Member and advise him, her, or it of the releases provided pursuant to this Settlement Agreement. If so requested by Starbucks or counsel for Starbucks, Class Counsel shall provide this notice.

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 14

**8.2**     Upon entry of the Final Order and Judgment, the Actions shall be dismissed with prejudice.  Class Members may not commence or actively prosecute actions against Starbucks that are based on any Settled Claims once the Final Order and Judgment is entered.

**8.3**     The Court retains exclusive and continuing jurisdiction over the Actions that are pending before the Court and over all Parties to interpret and enforce the terms, conditions, and obligations of this Settlement Agreement.

## 9.     RELEASES

**9.1**     Upon entry of the Final Order and Judgment, and regardless of whether any Class Member executes and delivers a written release, each Releasing Party shall be deemed to release and forever discharge Starbucks from any and all Settled Claims.

**9.2**     The Releasing Parties shall by operation of the Final Order and Judgment expressly waive the provisions of California Civil Code § 1542 (and all other similar provisions of law in California or another state) to the full extent that these provisions may be applicable to this release. California Civil Code § 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS**
> **WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT**
> **TO EXIST IN HIS OR HER FAVOR AT THE TIME OF**
> **EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM**
> **OR HER MUST HAVE MATERIALLY AFFECTED HIS OR**
> **HER SETTLEMENT WITH THE DEBTOR.**

The Releasing Parties shall by operation of the Final Order and Judgment be deemed to assume the risk that facts additional, different, or contrary to the facts which each believes or understands to exist, may now exist or may be discovered after the release set forth in this Settlement Agreement becomes effective, and the Releasing Parties by operation of the Final Order and Judgment shall be

18177-0259/LEGAL25273412.1

deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

## 10. ATTORNEYS' FEES AND COSTS

**10.1** Class Counsel may apply to the Court for an award of their reasonable attorneys' fees and costs in a motion to be filed with the Court prior to the Fairness Hearing. Class Counsel agrees to seek up to, but not more than, twenty-five percent of the Common Fund as an award of attorneys' fees and a maximum of $12,000 for their out-of-pocket expenses. Starbucks reserves the right to object to the attorneys' fee request following Class Counsel's submission to the Court.

**10.2** Attorneys' fees and costs and expenses as awarded by the Court shall be paid by Starbucks out of the Common Fund within fourteen Days after the Court's issuance of an order awarding such attorneys' fees and costs and expenses. If the Final Order and Judgment or the Court's order awarding attorneys' fees and costs and expenses should be reversed or modified on appeal or for any other reason, Class Counsel shall within fourteen Days thereafter repay to the Common Fund the difference between the amount that they were paid under this subsection and the amount to which they were ultimately deemed to be entitled, if any.

## 11. TERMINATION OF THE SETTLEMENT AGREEMENT

**11.1** The performance of this Settlement Agreement is expressly contingent upon entry of the Final Order and Judgment. If the Court declines to issue the Final Order and Judgment, or if Starbucks terminates the Settlement Agreement as provided herein, the Settlement Agreement will be terminated.

**11.2** If the Final Order and Judgment is vacated, modified, or reversed, in whole or in part, the Settlement Agreement will be deemed terminated unless all Parties who are adversely affected thereby, in their sole discretion within thirty Days of receipt of such ruling, provide written notice through counsel to Class Counsel and Starbucks' Counsel of their intent to proceed with the Settlement Agreement as modified by the Court or on appeal.

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 16

**11.3**    If this Settlement Agreement is terminated it will have no force or effect whatsoever, shall be null and void, and will not be admissible as evidence for any purpose in any pending or future litigation in any jurisdiction.

## 12.    PUBLICITY

**12.1**    The Parties shall not initiate any publicity relating to or make any public comment regarding this Settlement Agreement (other than as may be directed by the Court regarding notice to the Class in its Preliminary Approval Order), except that the Parties will mutually agree on a joint press release to be issued after entry of the Final Order and Judgment, which release may be posted on the websites of Class Counsel and Starbucks' Counsel.

**12.2**    The Parties may respond as necessary to inquiries from government entities regarding the Actions or this Settlement Agreement and may disclose information about the Actions and this Settlement Agreement to accountants and insurers and as deemed necessary to comply with federal and state securities law disclosure requirements.

**12.3**    Other than as provided in this section 12, the Parties and their respective counsel shall limit their public comments regarding the Actions and the Settlement Agreement to disclosure of only such information as is necessary to implement this Settlement Agreement and is consistent with the terms thereof.

## 13.    MISCELLANEOUS PROVISIONS

**13.1**    This Settlement Agreement, including all attached exhibits, shall constitute the entire agreement among the Parties with regard to the subject matter of this Settlement Agreement and shall supersede any previous agreements and understandings between the Parties.

**13.2**    This Settlement Agreement may not be changed, modified, or amended, except in writing signed by Class Counsel and Starbucks or Starbucks' Counsel, subject to Court approval if required by law or agreement.

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 17

**13.3**   Each Party represents and warrants that it enters into this Settlement Agreement of his, her, or its own free will.  Each Party is relying solely on its own judgment and knowledge and is not relying on any statement or representation made by any other Party or any other Party's agents or attorneys concerning the subject matter, basis, or effect of this Settlement Agreement, except that in determining that the monetary relief provided by the Settlement Agreement is fair and reasonable, Class Counsel has relied upon the information provided to it by Starbucks relating to its best estimate of the amount of Upcharges charged by Starbucks to Class Members during the Class Period.

**13.4**   This Settlement Agreement has been negotiated at arms' length by Class Counsel and Starbucks' Counsel.  In the event of any dispute arising out of this Settlement Agreement or in any proceeding to enforce any of the terms of this Settlement Agreement, no Party shall be deemed to be the drafter of this Settlement Agreement or of any particular provision or provisions, and no part of this Settlement Agreement shall be construed against any Party on the basis of that Party's identity as the drafter of any part of this Settlement Agreement.

**13.5**   The Parties agree to cooperate fully and to take all additional action that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

**13.6**   This Settlement Agreement shall be binding upon and inure to the benefit of all the Parties and their respective representatives, heirs, successors, and assigns.

**13.7**   The headings of the sections of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

**13.8**   This Settlement Agreement will be construed in accordance with the laws of the State of Washington.

**13.9** If any provision, paragraph, section, subsection, or other portion of this Settlement Agreement is found to be void (except for section 9), all of the remaining provisions of this Settlement Agreement shall remain in full force and effect.

**13.10** Any notice, instruction, court filing, or other document to be given to any Party or attorneys under this Settlement Agreement shall be in writing and delivered personally or sent by registered or certified mail with postage prepaid, overnight delivery service, or by the federal court's CM/ECF system for filing and service, to the respective representatives identified below or to other recipients as the Court may specify. As of the date of this Settlement Agreement, these respective representatives are as follows:

For the Class:

BLOCK & LEVITON LLP
c/o Jason M. Leviton
155 Federal Street, Suite 1303
Boston, MA 02110
Telephone: 617.398.5600
Facsimile: 617.507.6020

SHAPIRO HABER & URMY LLP
c/o Thomas V. Urmy, Jr.
53 State Street
Boston, MA 02190
Telephone: 617.439.3939
Facsimile: 617.439.0134

For Starbucks:

PERKINS COIE LLP
c/o Rebecca S. Engrav
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

**13.11** The Parties each represent and warrant that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim or demand covered by this Settlement Agreement.

**13.12** The signatories to this Settlement Agreement represent that they have been duly authorized to execute this Settlement Agreement on behalf of the Parties they purport to represent.

**13.13** This Settlement Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

Dated: November 30, 2012.

SHAPIRO HABER & URMY LLP

By: _Thomas V. Urmy /AK_

Thomas V. Urmy, Jr.
on behalf of all Class Members

Dated: November ___, 2012.

BLOCK & LEVITON LLP

By: _____

Jason M. Leviton
on behalf of all Class Members

Dated: November ___, 2012.

STARBUCKS CORPORATION

By: _____

Gina Short
Director Brand Management

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 20

**13.13**  This Settlement Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

Dated: November ___, 2012.                 SHAPIRO HABER & URMY LLP


                                            By: _____
                                                 Thomas V. Urmy, Jr.
                                                 on behalf of all Class Members


Dated: November 30, 2012.                   BLOCK & LEVITON LLP


                                            By: _____
                                                 Jason M. Leviton
                                                 on behalf of all Class Members


Dated: November ___, 2012.                  STARBUCKS CORPORATION


                                            By: _____
                                                 Gina Short
                                                 Director Brand Management

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 20

**13.13** This Settlement Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

Dated: November ___, 2012.                          SHAPIRO HABER & URMY LLP

By: _____
Thomas V. Urmy, Jr.
on behalf of all Class Members

Dated: November ___, 2012.                          BLOCK & LEVITON LLP

By: _____
Jason M. Leviton
on behalf of all Class Members

Dated: November 30, 2012.                            STARBUCKS CORPORATION

By: _____
Gina Short
Director Brand Management

SETTLEMENT AGREEMENT
(No. 2:11-cv-01985-MJP) – 20

18177-0259/LEGAL25273412.1

# EXHIBIT A

# CLAIM FORM

You must complete ALL fields below for your claim to be considered. The deadline to mail this form is _____. You must mail this form, postage prepaid, to:

> Simpluris, Inc.
> 3176 Pullman Street
> Costa Mesa, CA 92626

**Your Name:**

**Your Email Address:**

**Your Postal Mailing Address:**

**Your Telephone Number:**

I purchased scooped coffee beans in amounts less than one pound at a time from a Starbucks store in the United States between December 9, 2007 and November 7, 2011. Specifically, [You Must Complete Option A or B, But Not Both, Below]:

☐ **OPTION A:** Attached are receipts of my purchases. I made these purchases. I would like to receive my payment [Check One]:

  ☐ In a Starbucks gift card, **or**
  ☐ In a check made out to the name above.

☐ **OPTION B:** I do not have receipts, but I swear or affirm under penalty of perjury under the laws of the United States of America that I purchased scooped coffee beans in amounts less than one pound at a time as follows [Complete the Blanks Below]:

  • I made these purchases _____ times between December 9, 2007 and November 7, 2011.

  • I made these purchases in [List Cities]:_____
    _____

  • I made these purchases on [List Approximate Date(s), if Possible]:_____
    _____

I swear or affirm under penalty of perjury under the laws of the United States of America that all of the information I provide above is true and correct.

Signature: _____

Signed in _____ on _____
            [City, State]                         [Date]

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

IN RE STARBUCKS CONSUMER
LITIGATION

Case No. 2:11-cv-01985-MJP

## [PROPOSED] FINAL ORDER AND JUDGMENT

Plaintiffs Jonah Cannon, James Kaen and Rachel Wassel and Defendant Starbucks Corporation have submitted their Settlement Agreement seeking to settle this class action, subject to court approval. On ____, the Court granted preliminary approval of the settlement, conditionally certified a settlement Class, and authorized a Notice Plan pursuant to which notice of the Settlement Agreement would be given by Starbucks to the members of the settlement Class.

In accordance with the terms of the Court's Preliminary Approval Order and the Notice Plan discussed in that order, notice was given of the terms of the Settlement Agreement and an opportunity to object to or opt out of the Settlement Agreement. _____ Class Member(s) has/have objected to the Settlement Agreement, and ____ people have timely opted out of the Settlement Agreement.

Having considered the proposed Settlement Agreement, the papers submitted by the parties in connection with preliminary approval and final approval of the Settlement Agreement, and the arguments of counsel at the hearings on preliminary approval and the Fairness Hearing held on ____, the Court hereby grants final approval of the Settlement Agreement pursuant to Fed. R. Civ. P. 23(e) and enters judgment accordingly.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.     For the reasons set forth in the Preliminary Approval Order and in the transcript of the proceedings of the Fairness Hearing, which are adopted and incorporated herein by reference, the Court finds that the Settlement Agreement should be approved pursuant to Fed. R. Civ. P. 23(e). For purposes of this Final Order and Judgment, the Court adopts the definitions set forth in the Settlement Agreement and capitalized terms in this order have the meanings assigned to them in the Settlement Agreement.

2.     For purposes of settlement and final approval of the Settlement Agreement, the Court hereby makes final the earlier provisional certification of the settlement Class defined as: "All persons who between December 9, 2007 and November 7, 2011 made a purchase from any company-owned Starbucks store in the United States of scooped (i.e., not prepackaged) coffee beans in an amount less than one pound, other than half-pound purchases during January to March 2008 of types of coffee that had half-pound prices posted on menu boards during that time. Excluded from the Class are the following: (1) Starbucks Corporation and any entity in which Starbucks Corporation has a controlling interest and their respective legal representatives, officers, directors, assigns, and successors; and (2) the judges to whom the Actions are assigned and any member of the judges' staff and immediate family."

3.     The Court finds that the Notice Plan fully and accurately informed the Class Members of all material elements of the proposed Settlement and of their opportunity to object to or opt out of the settlement. The Notice Plan was the best notice practicable under the circumstances, provided valid, due and sufficient notice to all Class Members and complied fully with the Federal Rules of Civil Procedure, due process and other applicable law. A full opportunity has been provided to all such persons to participate in the Fairness Hearing.

18177-0259/LEGAL25276453.1

4.     The Court has reviewed the Settlement Agreement and finds that it is fair, adequate, and reasonable when balanced against the possible outcome of further litigation relating to liability and damages and the difficulty and delays inherent in such litigation. The court finds that extensive informal discovery and research have been conducted such that counsel for all parties are able reasonably to evaluate their respective positions. The court finds that the Settlement Agreement has been reached after intensive, serious, and non-collusive arm's-length negotiations.

5.     [Pursuant to (his/her/their) timely opt-out request(s), _____ is/are excluded from this Settlement Agreement and is/are free, if (he/she/they) choose(s), to pursue any claims (he/she/they) may have against Starbucks and is/are not bound by the terms of this Order or the Settlement Agreement.]

6.     The Court hereby grants final approval to the Settlement Agreement and finds it fair, reasonable and adequate, and in the best interests of the Class. Accordingly, the Court hereby directs that the Settlement Agreement be effected in accordance with the Settlement Agreement and the following terms and conditions.

7.     The Court awards to Class Counsel attorneys' fees in the amount of $_____, constituting __% of the total Common Fund, plus costs of $_____, for all past and remaining work until completion of this matter. Such awards, which are to be paid out of the Common Fund, are made in accordance with the terms of the Settlement Agreement and are fair and reasonable under the circumstances. In ordering this award of attorneys' fees and costs, the Court has considered the following factors: (a) the contingent nature of this action; (b) the experience, reputation, and ability of Class Counsel and the skill they displayed in this litigation; (c) the amount of time expended by counsel; (d) the results achieved under the Settlement

3

Agreement; and (e) the preclusion of other employment.

8.    The Court awards payment to the Class Action Administrator for its work in administering the claims process under the Settlement Agreement. The amount will be determined after the total number of claims is known but will not exceed $49,000.

9.    The funds in the Common Fund shall be distributed in accordance with the terms of the Settlement Agreement. Any surplus funds remaining in the Common Fund seven months following the Settlement Date defined in the Settlement Agreement shall be paid as a *cy pres* award to the National Consumer Law Center in Boston, Massachusetts.

10.    Within thirty (30) Days after payment in full of all amounts awarded in the Settlement Agreement and this Final Order and Judgment, the Class Action Administrator shall provide to Class Counsel a certification that it has complied fully with its obligations hereunder. Class Counsel then shall forthwith file said certification with the Court.

11.    Without affecting the finality of this Final Order and Judgment, the Court reserves continuing and exclusive jurisdiction over the Parties to the Settlement Agreement to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms and the orders of this Court for the mutual benefit of the Parties. Having found that said Settlement Agreement is fair and reasonable, the Court, in the interest of justice, expressly directs the Clerk of the Court to enter this Final Order and Judgment, and thereby decrees that, upon entry, it be deemed a final judgment finally dismissing the Action subject to its terms.

Dated: _____, 2013

_____
Marsha J. Pechman
United States District Judge

4

# EXHIBIT C

## NOTICE PLAN

### I.  OVERVIEW

This Notice Plan outlines procedures to provide notice of the Settlement Agreement agreed to by the Parties in *In Re Starbucks Consumer Litigation*, No. 2:11-cv-01985-MJP (W.D. Wash.) (consolidated amended complaint filed Apr. 16, 2012), consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

The Notice Plan consists of:  (1) email and/or hard copy mail notice to identifiable Class Members, (2) the online notice program, and (3) the Settlement Website.

Capitalized terms in this Notice Plan have the meaning set out in the Settlement Agreement. This Notice Plan is an exhibit to and part of the Settlement Agreement.  Dates that are left blank in this Notice Plan will be calculated after the Court enters the Preliminary Approval Order and will be stated as specific dates in communications to Class Members.

### II.  NOTICE TO IDENTIFIABLE CLASS MEMBERS

Class Members who used a registered My Starbucks Rewards card to purchase scooped coffee beans are individually identifiable.  To provide notice of the settlement prior to final approval by the Court, Starbucks will send an email to the email address on file for each My Starbucks Rewards Member who falls within the definition of the Class.  If no email address is available or if the email is undeliverable, Starbucks will send notice by U.S. mail to the My Starbucks Rewards Member's postal address that Starbucks has on file, if any.  Starbucks will send the email notices no later than thirty Days after the Court enters the Preliminary Approval Order. Ten Days after it has sent the email notices, Starbucks will send the notice by U.S. mail to My Starbucks Rewards Members for whom it has no email address on file or from whom Starbucks received notification that the original email sent was undeliverable.  The Parties agree that further efforts, such as updating postal addresses, are not necessary.

The email and hard copy notices will state:

> **You may be part of a lawsuit about purchases of "scooped" coffee beans in amounts under a pound.**  According to our My Starbucks Rewards records, you purchased scooped coffee beans from Starbucks in an amount less than a pound at time between December 2007 and October 2011.  A nationwide class action lawsuit is pending against Starbucks alleging that Starbucks did not adequately disclose that during this time period, it charged a pro-rata higher price for some purchases of "scooped" coffee beans than it did for one-pound purchases.
>
> **Proposed settlement of the lawsuit.**  A proposed settlement has been reached in the lawsuit and it could affect your rights.  If the settlement is approved by the court, Starbucks will credit

your My Starbucks Rewards account with a sum that approximates the difference between what you paid for these purchases and what you would have paid if Starbucks had charged the pro-rata portion of the one-pound price. If the amount you would be credited is less than $5, Starbucks will instead credit your account with $5.

**Your options.** Click on this link to a website about the settlement **[link to www.starbucks.com/scoopedcoffeesettlement]** to find out more about the claims in the case, what the settlement will provide to class members, and what your options are. The court will decide whether the proposed settlement is fair and should be approved. You have the right to exclude yourself from the class entirely. You also have the right to remain in the class, but tell the court whether you think the settlement is fair. **If you take no action, you will be bound by whatever the court decides.**

**Details.** The case is called *In re Starbucks Consumer Litigation*, Case No. 2:11-cv-01985, and it is pending in federal court in the Western District of Washington before Chief Judge Marsha J. Pechman. A federal court authorized this communication to you. It is not a solicitation from a lawyer.

The email notices will be sent from an unmonitored sending email address that is configured not to receive replies. If recipients reply to the email, they will receive this message:

We're sorry, but this email address does not receive replies. We are not able to discuss the lawsuit or settlement with you by email. Please visit the website about the settlement **[link to www.starbucks.com/scoopedcoffeesettlement]** to find out what your options are and how you can communicate any choices you make regarding the lawsuit. The procedures described on the website have been approved by the court and are in place to make sure everyone is treated fairly and consistently.

## III.    ONLINE NOTICE PROGRAM

Starbucks has no information from which it can identify Class Members, or even other customers in general, who are not My Starbucks Rewards Members. Thus, it is not possible to reach the rest of the Class through individual emails or hard copy mailed notices. Notice will be provided to these unknown Class Members through banner ads in online advertising networks likely to reach Starbucks customers and through search ads (the ads that appear in response to user queries on search engines), all targeted to the United States. The ads will link to the Settlement Website, www.starbucks.com/scoopedcoffeesettlement. (Section IV below describes the Settlement Website in more detail.)

18177-0259/LEGAL25274232.1

Online notice is appropriate for other reasons as well. Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly and without cost navigate to a website for further information. Starbucks customers are above-average Internet users. Research used and relied upon by Starbucks for its own marketing indicates that more than 93% percent of Starbucks customers looked at or used the Internet in the past 30 days.

The online ads described below will cost up to $205,000, with a minimum of $150,000 and no more than $200,000 to be spent on banner advertisements and between $2,500 and $5,000 to be spent on search ads. This amount is an external expenditure that will be deducted from the Common Fund.

### A. Banner Advertisements

*Design.* Starbucks will design Internet banner advertisements to alert viewers to the Settlement Agreement by using simple and clear text. When viewers click on the banner advertisement, they will be connected automatically to the Settlement Website that contains complete information about their legal rights. Here is a mock-up of the banner advertisement (dimensions and spacing may vary depending on the requirements of each ad placement):



*Placement.* Banner advertisements will be placed in the following online locations: Google Display Network (which syndicates ads and places them on multiple non-Google websites according to targeting choices and Google's algorithms, different from search ads discussed below), CNN, and Expedia. These locations were selected because they are mainstream Internet properties with wide usage and because their viewers have a demographic profile that corresponds to the demographic profile of Starbucks customers known to the Starbucks marketing team. The Parties have no reason to think that the demographic profile of Class Members (i.e., purchasers of scooped coffee beans) differs from the demographic profile of Starbucks customers generally.

*Duration.* The banner advertisements will begin running no later than thirty Days after the Court enters the Preliminary Approval Order and will run for a period of thirty Days. The number of impressions of each ad will be maximized to obtain the greatest possible coverage with a total spend of at least $150,000 and no more than $200,000. There will be at least three million impressions of the ads.

-3-

### B. Search Advertisements

*Design.* Starbucks will design Internet search engine advertisements to direct viewers who have heard of the settlement and search for information online to the Settlement Website. When viewers click on the search advertisement, they will be connected automatically to the Settlement Website that contains complete information about their legal rights. Here is a mock-up of the search advertisement (exact text may vary if there is a need to decrease character count):

> Attention Buyers of Scooped Coffee Beans from Starbucks
> Class Action Lawsuit Settlement May Affect You – Court-Approved Website
> www.starbucks.com/scoopedcoffeesettlement

*Placement.* Search advertisements will be placed on the two most-used search engines, Google and Bing. The keywords to trigger display of the ads (when matched to a user query using the broad match settings on search engines) will include "Starbucks class action"; "scooped coffee"; "lawsuit about Starbucks"; and "class action about Starbucks coffee beans."

*Duration.* The search advertisements will begin running no later than thirty Days after the Court enters the Preliminary Approval Order and will run for a period of thirty Days. The number of impressions of each ad on each of the two search engines will be maximized to obtain the greatest possible coverage with a total spend of at least $2,500 and no more than $5,000.

### C. Reference to the Settlement Website on the Starbucks Homepage

In addition, Starbucks will place a reference to the Settlement Website on the bottom of its homepage, www.starbucks.com. The reference will be: "Scooped Coffee Class Action **[link to www.starbucks.com/scoopedcoffeesettlement].**" The Starbucks homepage receivesapproximately nine million visits per month. This reference will remain on the Starbucks homepage until the Settlement Agreement is fully administered, including all payments to Class Members and the cy pres payment, if any.

## IV. SETTLEMENT WEBSITE

As outlined above, all forms of notice will drive viewers to an informational Settlement Website located at www.starbucks.com/scoopedcoffeesettlement. The Settlement Website is a critical component of the Notice Plan. A website is a constant information source instantly accessible to millions of viewers. The Settlement Website will utilize the Internet's ability to serve as a key distribution channel and customer service bureau. (In addition to the specific forms of notice above, the Settlement Website will likely come up high in "organic" search results on Google, Bing, and Yahoo in response to user queries for more information, further reinforcing the Settlement Website as the central component of the Notice Plan.)

The Settlement Website will combine clean site design with appropriate site navigation cues. The Settlement Website will provide Class Members with easy access to the details of the litigation. The Settlement Website will be designed for ease of navigation and comprehension, with user-friendly words and simplicity of design and content selection.

18177-0259/LEGAL25274232.1

The homepage of the Settlement Website will contain the text below, and the page available when each lefthand-side link is clicked is shown next:

| | **Starbucks Scooped Coffee Class Action Settlement Website** |
|---|---|
| • Home<br><br>• Dates and deadlines<br><br>• What is the lawsuit about and who is in the class?<br><br>• What will class members get if the settlement is approved?  What are the other terms of the settlement?<br><br>• What are my options regarding participation in the settlement?<br><br>• How do I submit a claim?<br><br>• Copies of court documents | Welcome!  This website is about settlement of a nationwide class action lawsuit relating to purchases of "scooped" (i.e., not prepackaged) coffee beans from Starbucks in amounts less than a pound.  **This settlement, if approved by the court, may affect your rights.**  A federal court authorized this website and its contents.  It is not a solicitation from a lawyer.<br><br>The case is called *In re Starbucks Consumer Litigation*, Case No. 2:11-cv-01985, and it is pending in federal court in the Western District of Washington before Chief Judge Marsha J. Pechman.<br><br>This website provides information about who is in the class, how you can exclude yourself from the class if you do not want to participate, how to tell the court if you think the proposed settlement is not fair, what the class will get if the settlement is approved, and how you can submit a claim.  This website will be updated as necessary during the settlement process.  Please use the links on the left to learn more. |

### A.   Page for "Dates and deadlines"

This page will be a simple chart listing the deadlines from the Settlement Agreement and as ordered by the Court in the Preliminary Approval Order.

### B.   Page for "What is the lawsuit about and who is in the class?"

| | **Starbucks Scooped Coffee Class Action Settlement Website**<br><br>**What is the lawsuit about and who is in the class?** |
|---|---|
| • Home | |

| | |
|---|---|
| • Dates and deadlines<br><br>• What is the lawsuit about and who is in the class?<br><br>• What will class members get if the settlement is approved?  What are the other terms of the settlement?<br><br>• What are my options regarding participation in the settlement?<br><br>• How do I submit a claim?<br><br>• Copies of court documents | The lawsuit claims that Starbucks did not disclose to customers who purchased scooped coffee beans in amounts less than one pound at a time in U.S. Starbucks stores that the price for these purchases was higher per pound than the price charged for purchases of one pound of coffee beans.<br><br>The lawsuit does not involve purchases of prepackaged coffee beans, available in one-pound or sometimes half-pound bags.  The lawsuit does not involve purchases of coffee beverages, such as lattes or drip coffee.<br><br>Starbucks denies it has done anything wrong, but has agreed to settle the lawsuit.<br><br>Class members are all persons who made a purchase of less than one pound of scooped (i.e., not prepackaged) coffee beans at a time between December 9, 2007 and November 7, 2011 from any company-owned Starbucks store in the United States, other than half-pound purchases during January to March 2008 of types of coffee that had half-pound prices posted on menu boards during that time.  You are not a class member if you are: (1) Starbucks Corporation or any entity in which Starbucks Corporation has a controlling interest and their respective legal representatives, officers, directors, assigns, and successors; (2) the judges to whom the Actions are assigned and any member of the judges' staff and immediate family; and (3) any person who submits a timely, properly executed, and valid request for exclusion from the Class as described here **[link to "What are my options regarding participation in the settlement?" page of this website]**.<br><br>This class exists only as part of this settlement.  If the court does not approve the settlement, then the litigation will return to the way it was before the |

| | |
|---|---|
| | settlement. |

Page for "What will class members get if the settlement is approved?  What are the other terms of the settlement?"

| | **Starbucks Scooped Coffee Class Action Settlement Website** |
|---|---|
| • Home | **What will class members get if the settlement is approved?  What are the other terms of the settlement?** |
| • Dates and deadlines | |
| • What is the lawsuit about and who is in the class? | Starbucks has agreed to settle this lawsuit by paying $1,733,025.71 for class member claims, administrative expenses, attorneys' fees, and costs. |
| • What will class members get if the settlement is approved?  What are the other terms of the settlement? | If the court approves the settlement, class members who made their purchases by using a registered My Starbucks Rewards card will receive the greater of (a) the parties' best estimate of the difference between what the class member paid for applicable purchases and what the class member would have paid if Starbucks had charged pro-rata the price of one-pound purchases, using a weighted average of $0.45 per transaction, multiplied by the total number of transactions on the card, or (b) Five Dollars ($5). These class members will receive only this credit; they cannot also submit a claim. |
| • What are my options regarding participation in the settlement? | |
| • How do I submit a claim? | |
| • Copies of court documents | |
| | Class members who did not use a My Starbucks Rewards card will receive compensation only if they submit a claim.  A class member who submits a claim form accompanied by receipts from their purchases will receive the greater of (a) the parties' best estimate of the difference between what the class member paid for applicable purchases identified on the receipts and what the class member would have paid if Starbucks had charged pro-rata the price of one-pound purchases, using a weighted average of |

18177-0259/LEGAL25274232.1

$0.45 per transaction, multiplied by the total number of transactions on the receipts, or (b) Five Dollars ($5). A class member who submits a claim form accompanied by a sworn declaration only, without receipts, will receive the lesser of (a) the parties' best estimate of the difference between what the class member paid for applicable purchases identified in the affidavit and what the class member would have paid if Starbucks had charged pro-rata the price of one-pound purchases, using a weighted average of $0.45 per transaction, multiplied by the total number of transactions identified in the sworn declaration, or (b) Ten Dollars ($10).

The settlement also provides that the attorneys who brought this lawsuit on behalf of the class will request approval from the court for up to 25% of the total settlement amount (25% of $1,733,025.71) to be paid to them as their attorneys' fees. Costs incurred by those attorneys (not to exceed $12,000), the administrative expenses of providing notice, and cost of administering the claims process (not to exceed $49,000) will also come out of the total settlement amount.

If too many claims are received to pay all of them in full, each class member who submitted a valid claim will receive a pro-rata portion of the claimed amount. Conversely, if there is money left over after paying out all claims, the money will be donated to the National Consumer Law Center **[link to http://www.nclc.org/]**.

You can review the full settlement agreement **[link to filed version of settlement agreement]** for more information.

18177-0259/LEGAL25274232.1

**D. Page for "What are my options regarding participation in the settlement?"**

| | Starbucks Scooped Coffee Class Action Settlement Website |
|---|---|
| • Home <br><br> • Dates and deadlines <br><br> • What is the lawsuit about and who is in the class? <br><br> • What will class members get if the settlement is approved? What are the other terms of the settlement? <br><br> • What are my options regarding participation in the settlement? <br><br> • How do I submit a claim? <br><br> • Copies of court documents | **What are my options regarding participation in the settlement?** <br><br> **1. What should I do if I do not want to be in the class or participate in the settlement?** <br><br> You may opt out of the settlement. You will not be eligible for benefits under the settlement. You keep your right to sue regarding settlement claims. To opt out, you must send a written letter stating you want to be excluded from the settlement, signed under penalty of perjury, sent by mail with postage prepaid, and postmarked prior to _____ to Class Counsel at the following address: <br><br> BLOCK & LEVITON LLP <br> c/o Jason M. Leviton <br> 155 Federal Street, Suite 1303 <br> Boston, MA 02110 <br><br> **2. What should I do if I want to remain in the class, but tell the court that I do not like some or all of the settlement?** <br><br> You may write to the court and explain why you object to or disagree with the settlement. To do this, you must prepare a written statement that (1) explains in detail your objections to the terms of the settlement, including any supporting evidence or legal authority; (2) lists your contact information including your name, email address, and postal address; and (3) includes or attaches information showing that you made the type of purchases at issue and are a class member. You must file this statement with the court in the Western District of Washington |

18177-0259/LEGAL25274232.1

and also mail it to both of the parties' attorneys prior to _____:

BLOCK & LEVITON LLP
c/o Jason M. Leviton
155 Federal Street, Suite 1303
Boston, MA 02110

PERKINS COIE LLP
c/o Rebecca S. Engrav
1201 Third Avenue, Suite 4900
Seattle, WA 98101

You or your attorney may (but do not have to) appear and speak at a court hearing prior to the court's decision on whether to approve the settlement. If you want or your attorney wants to appear, you must file with the Court and send to both the law firms listed above a notice of your intent to appear prior to _____. If your attorney is going to appear, the attorney also must file and serve a notice of appearance prior to the same date.

**3. What should I do if I want to stay in the class and receive compensation?**

If you paid for your scooped coffee bean purchases with a My Starbucks Rewards card, you do not need to do anything to receive compensation.

If you did not use a My Starbucks Rewards card to pay for your scooped coffee bean purchases, you need to submit a claim **[link to page below "How do I submit a claim"]** following the procedures outlined on this website.

**4. What happens if I do nothing?**

If you are a class member and the settlement is approved and you do nothing, the following will

-10-

| | happen: |
|---|---|
| | If you paid for your scooped coffee bean purchases with a registered My Starbucks Rewards card, you will receive a credit to your account as provided in the settlement agreement.  You will give up your right to sue on your own regarding claims that are a part of the settlement. |
| | If you did not use a registered My Starbucks Rewards card to pay for your scooped coffee bean purchases, you will not receive any benefit under the settlement agreement unless you file a claim.  You will give up your right to sue on your own regarding claims that are a part of the settlement. |
| | **5. What is the effect if the court approves the settlement?** |
| | Unless you exclude yourself from this settlement, this settlement is final and binding and your legal rights are affected even if you do not act.  The court will determine whether to approve the settlement at a court hearing on _____.  You or your attorney may appear at this hearing but you don't have to appear. |

E.      Page for "How do I submit a claim?"

| | **Starbucks Scooped Coffee Class Action Settlement Website** |
|---|---|
| • Home | **How do I submit a claim?** |
| • Dates and deadlines | The only way to submit a claim is to print out the claim form **[link to claim form]**, fill it out , sign it, and mail it, postage prepaid, to the address on the top of the claim form. |
| • What is the lawsuit about and who is in the class? | |
| • What will class members get if the | You must fill out the form completely and mail it no |

18177-0259/LEGAL.25274232.1

| | |
|---|---|
| settlement is approved? What are the other terms of the settlement?<br><br>• What are my options regarding participation in the settlement?<br><br>• How do I submit a claim?<br><br>• Copies of court documents | later than _____.<br><br>Valid claims will be processed and gift cards or checks (see the claim form) will be mailed out after _____. |

**F.** **Page for "Court Documents"**

This page will list links to uploaded copies of the Settlement Agreement, the Preliminary Approval Order, the Motion for Final Approval, and the Final Order and Judgment (as each becomes available).

-12-

# EXHIBIT D

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE STARBUCKS CONSUMER LITIGATION | Case No. 2:11-cv-01985-MJP |

## [PROPOSED] ORDER GRANTING
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement came on for hearing before this Court on _____, 20__. Having considered the papers submitted in support of the motion, and having heard oral argument from the parties, and the Defendant having stated its non-opposition and consent to the motion, pursuant to Fed. R. Civ. P. 23 the Court HEREBY ORDERS THE FOLLOWING:

1.     For settlement purposes only, the Court conditionally certifies a settlement Class defined as "All persons who between December 9, 2007 and November 7, 2011 made a purchase from any company-owned Starbucks store in the United States of scooped (i.e., not prepackaged) coffee beans in an amount less than one pound, other than half-pound purchases during January to March 2008 of types of coffee that had half-pound prices posted on menu boards during that time. Excluded from the Class are the following: (1) Starbucks Corporation and any entity in which Starbucks Corporation has a controlling interest and their respective legal representatives, officers, directors, assigns, and successors; and (2) the judges to whom the Actions are assigned and any member of the judges' staff and immediate family."

2.     The Court appoints Jonah Cannon, James Kaen and Rachel Wassel as

representatives of the Class.

3.      The Court grants preliminary approval of the settlement on the terms set forth in the Settlement Agreement annexed to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement filed on November 30, 2012. The Settlement Agreement appears to the Court on its face to be fair, adequate, and reasonable. The Court, for purposes of this Preliminary Approval Order, adopts the definitions set forth in the Settlement Agreement. Capitalized terms in this Preliminary Approval Order shall have the same meaning as in the Settlement Agreement.

4.      The Court approves, as to form and content, the Notice Plan which is attached to the Settlement Agreement as Exhibit C. The Court finds that the notice of the Settlement Agreement that will be provided to Class Members under the Notice Plan meets the requirements of due process and provides the best notice practicable under the circumstances and that it will constitute due and sufficient notice to all persons entitled thereto.

5.      The Court orders the following schedule for consideration of approval of the Settlement Agreement:

      a.      Starbucks shall activate the Notice Plan in accordance with its terms and the terms of the Settlement Agreement within 30 Days after entry of this Preliminary Approval Order. The Court authorizes the expenditure of funds from the Common Fund for external expenses to conduct the Notice Plan as outlined in the Notice Plan.

      b.      Any Class Member who wishes to object to any aspect of the Settlement Agreement must, no later than 90 Days after entry of this Preliminary Approval Order , file with the Court and provide to Class Counsel and Starbucks' Counsel by delivery, certified or registered mail, or CM/ECF service, a written statement that includes (1) a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for

2

each objection, including any evidence and legal authority the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his or her objection(s); (2) the Class Member's name, email and postal address, and telephone number; and (3) information demonstrating that the Class Member is entitled to be included as a member of the Class. Any attorney retained by any Class Member at his or her own expense for the purpose of making an objection to the Settlement Agreement shall comply with the foregoing provisions and shall in addition no later than 90 Days after entry of this Preliminary Approval Order file with the Court and provide to Class Counsel and Starbucks' Counsel by delivery, certified or registered mail, or CM/ECF service, a notice of appearance on behalf of the objecting Class Member. Class Members or their attorneys intending to make an appearance at the Fairness Hearing must, no later than twenty-one Days before the Fairness Hearing, file a notice of intention to appear with the Court and provide to Class Counsel and Starbucks' Counsel by delivery, certified or registered mail, or CM/ECF service, a copy of the notice. Any Class Member who fails to comply with the foregoing shall be deemed to have waived his or her right to object to the Settlement Agreement and shall have no right to appeal from any order or judgment entered by the Court.

c. Any person who otherwise falls within the definition of the Class who wishes to exclude himself or herself from the Class and not to participate in the Settlement Agreement shall mail a written request to do so, signed under penalty of perjury, to Class Counsel postage prepaid and postmarked no later than 90 Days after entry of this Preliminary Approval Order. Within five Days after that date, Class Counsel will provide to Starbucks' Counsel and the Class Action Administrator a list of any persons who have requested exclusion from the Class.

d. Class Counsel shall file and serve their motion for their attorneys' fees and costs no later than 97 Days after entry of the Preliminary Approval Order.

e. Class Counsel shall file and serve their motion for final approval no later than ___ Days before the Fairness Hearing.

f. The Fairness Hearing shall be held at _____ on _____, 2013. The Fairness Hearing shall take place in Courtroom 14206, 14th Floor, at the United States District Court for the Western District of Washington at Seattle, 700 Stewart Street, Seattle, WA 98101.

g. The Court confirms the law firms Shapiro Haber & Urmy LLP and Block

3

& Leviton LLP as Class Counsel and the law firm Byrnes Keller Cromwell LLP as Liason Counsel.

h.    The Court confirms Simpluris, Inc. as the Class Action Administrator.

IT IS SO ORDERED, THIS _____ DAY OF _____, 2012.

_____
Marsha J. Pechman
United States District Judge

18177-0259/LEGAL25276414.1